U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

DEC - 9 2025

CLERK, U.S. DISTRICT COURT
By_____
De____

## BEFORE THE UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

IN RE: 3M COMBAT ARMS EARPLUG
PRODUCTS LIABILITY LITIGATION

MDL No.: 2885

## NOTICE OF POTENTIAL TAG-ALONG ACTIONS

In accordance with Rule 7.1(a) of the Rules of Procedure for the United States Judicial Panel on Multidistrict Litigation, the undersigned counsel write to notify you of the potential tag along action listed on the attached Schedule of Actions.

On September 19, 2025, the MDL Court recommended termination of this MDL "subject to this Court's continuing jurisdiction to enforce its Orders, handle any matters related to the settlement, or address any other miscellaneous issues necessary to complete the administration of these cases". The MDL Court further provided it "would welcome the reopening of the MDL docket and transfer of any such action to this Court for further proceedings, given the Court's familiarity and experience with this litigation" (see JPML Dkt. 2027). The cases provided in the attached Schedule of Actions qualify for transfer under the MDL Court's Order in that they explicitly refer to and relate to the MDL Court, its orders, transcripts of MDL hearings, and the administration of the global MDL settlement.

Docket sheets and complaints for the actions are attached as Exhibits A and B.

1

Case MDL No. 2085   Document 2025   Filed 11/26/25   Page 2 of 2

DATE: November 26, 2025          Respectfully submitted,

/s/ *Bryan F. Aylstock*

Bryan F. Aylstock, Florida Bar No. 782634
AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC
17 East Main Street, Suite 200
Pensacola, FL 32502
Phone: (850) 202-1010
Facsimile: (850) 916-7449
Email: baylstock@awkolaw.com

*Plaintiffs' Lead Counsel*

2

## BEFORE THE UNITED STATES JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | MDL No.: 2885 |

## SCHEDULE OF ACTIONS

| CASE CAPTION | COURT | CIVIL ACTION NO. | JUDGE |
|---|---|---|---|
| **Plaintiff:** Ricky Dean Kelly<br><br>**Defendants:** Bryan F. Aylstock; Aylstock, Witkin, Kreis & Overholtz, PLLC | N.D. of Florida, Pensacola Division | 3:25-cv-01947-TKW-ZCB[1] | Judge T. Kent Wetherell II<br><br>Magistrate Judge Zachary C. Bolitho |
| **Plaintiff:** Brandon Canup<br><br>**Defendant:** Bryan F. Aylstock; Aylstock, Witkin, Kreis & Overholtz, PLLC; et al. | N.D. of Texas, Fort Worth Division | 4:25-cv-01255-Y[2] | Judge Terry R. Means |

---

[1] Complaint and docket sheet attached hereto as Exhibit A.
[2] Complaint and docket sheet attached hereto as Exhibit B.

**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | MDL No.: 2885 |

## PROOF OF SERVICE

In compliance with Rule 4.1(a) of the Rules of Procedure for the United States Judicial

Panel on Multidistrict Litigation, I hereby certify that on November 26, 2025, I caused to be

served true and correct copy of the foregoing Notice of Potential Tag-Along Actions via

electronic mail on the *pro se* plaintiffs in these actions at the electronic mail addresses below:

Ricky Dean Kelly
3772 Merks Place
Leland, NC 28451
Email: kellyricky@bellsouth.net

Brandon Canup
4812 Hidden Oaks Ln
Arlington, TX 76017
Email: canup.brandon@gmail.com

Dated: November 26, 2025

/s/ *Bryan F. Aylstock*
Bryan F. Aylstock, Florida Bar No. 782634
AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC
17 East Main Street, Suite 200
Pensacola, FL 32502
Phone: (850) 202-1010
Facsimile: (850) 916-7449
Email: baylstock@awkolaw.com

*Plaintiffs' Lead Counsel*

# EXHIBIT A

Case 4:25-cv-01255-Y   Document 11   Filed 12/09/25   Page 6 of 67   PageID 169

ProSeNonPrisonerCase

# U.S. District Court
## Northern District of Florida (Pensacola)
## CIVIL DOCKET FOR CASE #: 3:25-cv-01947-TKW-ZCB

KELLY v. AYLSTOCK et al
Assigned to: JUDGE T KENT WETHERELL II
Referred to: MAGISTRATE JUDGE ZACHARY C BOLITHO
Demand: $75,000
Case in other court: First Judicial Circuit, Escambia County, FL,
                2025 CA 001560
Cause: 28:1332 Diversity-Other Contract

Date Filed: 10/14/2025
Jury Demand: Plaintiff
Nature of Suit: 190 Contract: Other
Jurisdiction: Diversity

## Plaintiff

**RICKY DEAN KELLY**

    represented by   **RICKY DEAN KELLY**
                   3772 MERKS PLACE
                   LELAND, NC 28451
                   PRO SE

V.

## Defendant

**BRYAN F AYLSTOCK**

    represented by   **GREGORY KENT RETTIG**
                   LLOYD GRAY WHITEHEAD &
                   MONROE - PENSACOLA FL
                   125 W ROMANA STREET
                   SUITE 330
                   PENSACOLA, FL 32502
                   850-777-3322
                   Fax: 850-777-3290
                   Email: grettig@lgwmlaw.com
                   *ATTORNEY TO BE NOTICED*

                   **JUSTIN TYLER KEETON**
                   LLOYD GRAY WHITEHEAD &
                   MONROE - PENSACOLA FL
                   125 W ROMANA STREET
                   SUITE 330
                   PENSACOLA, FL 32502
                   850-777-3322
                   Fax: 850-434-6491
                   Email: jkeeton@lgwmlaw.com
                   *ATTORNEY TO BE NOTICED*

                   **STEPHEN HERRE ECHSNER**
                   AYLSTOCK WITKIN KREIS &
                   OVERHOLTZ - PENSACOLA FL
                   17 E MAIN STREET

SUITE 200
PENSACOLA, FL 32502
850-202-1010
Fax: 850-916-7449
Email: sechsner@awkolaw.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**AYLSTOCK WITKIN KREISS &**          represented by   **GREGORY KENT RETTIG**
**OVERHOLTZ PLLC**                                     (See above for address)
                                                       *ATTORNEY TO BE NOTICED*

                                                       **JUSTIN TYLER KEETON**
                                                       (See above for address)
                                                       *ATTORNEY TO BE NOTICED*

                                                       **STEPHEN HERRE ECHSNER**
                                                       (See above for address)
                                                       *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/14/2025 | 1 | NOTICE OF REMOVAL by AYLSTOCK, WITKIN, KREISS & OVERHOLTZ, PLLC, BRYAN F AYLSTOCK from First Judicial Circuit, Escambia County, FL, case number 2025 CA 001560. ( Filing fee $ 405 receipt number BFLNDC-9666884.), filed by AYLSTOCK, WITKIN, KREISS & OVERHOLTZ, PLLC, BRYAN F AYLSTOCK. (Attachments: # 1 Exhibit A - State Court Complaint, # 2 Exhibit B - Notice of Removal in Circuit Court) (ECHSNER, STEPHEN) (Entered: 10/14/2025) |
| 10/14/2025 | 2 | CIVIL COVER SHEET. (ECHSNER, STEPHEN) (Entered: 10/14/2025) |
| 10/14/2025 | 3 | Notice to Pro Se Litigant. (alb) (Entered: 10/14/2025) |
| 10/14/2025 | 4 | ORDER. I hereby recuse myself from handling any proceedings in the above-styled case. The clerk is directed to randomly reassign this case to one of the other United States Magistrate Judges in this district and change the docket to reflect the reassignment. Signed by MAGISTRATE JUDGE HOPE T CANNON on 10/14/2025. MAGISTRATE JUDGE HOPE T CANNON recused. Case reassigned to MAGISTRATE JUDGE ZACHARY C BOLITHO for all further proceedings. (alb) (Entered: 10/14/2025) |
| 10/14/2025 |  | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE M CASEY RODGERS notified that action is needed Re: 1 Notice of Removal. (alb) (Entered: 10/14/2025) |
| 10/15/2025 | 5 | NOTICE *of Filing State Court Docket Documents* by BRYAN F AYLSTOCK, AYLSTOCK, WITKIN, KREISS & OVERHOLTZ, PLLC (Attachments: # 1 Complaint, # 2 Proposed Summons-BFA, # 3 Proposed Summons-AWKO, # 4 Issued Summons-BFA, # 5 Issued Summons-AWKO, # 6 Payment $420.00 Receipt #2025079103, # 7 Notice of Removal to U.S. District Court) (ECHSNER, STEPHEN) (Entered: 10/15/2025) |
| 10/15/2025 | 6 | ORDER. I hereby recuse myself from presiding over the above listed case. Signed by JUDGE M CASEY RODGERS on 10/15/2025. JUDGE M CASEY RODGERS recused. Case reassigned to JUDGE T KENT WETHERELL II for all further proceedings. (alb) (Entered: 10/15/2025) |

| 10/15/2025 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 1 Notice of Removal. (alb) (Entered: 10/15/2025) |
|---|---|---|
| 10/22/2025 | 7 | Return of Service of Summons and Complaint in the County Court for the First Judicial Circuit in and for Escambia County as to Bryan F. Aylstock Esq and Aylstock, Witkin, Kreiss & Overholts, PLLC, by RICKY DEAN KELLY. (alb) (Entered: 10/22/2025) |
| 10/22/2025 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 7 Return of Service of Summons and Complaint in the County Court for the First Judicial Circuit in and for Escambia County as to Bryan F. Aylstock Esq and Aylstock, Witkin, Kreiss & Overholts, PLLC, by RICKY DEAN KELLY. (alb) (Entered: 10/22/2025) |
| 10/24/2025 | 8 | Plaintiff's Motion to Remand and Supporting Memorandum of Law, by RICKY DEAN KELLY. (Attachments: # 1 Exhibits) (alb) (Entered: 10/27/2025) |
| 10/27/2025 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 8 MOTION to Remand. Referred to ZACHARY C BOLITHO. (alb) (Entered: 10/27/2025) |
| 10/27/2025 | 9 | NOTICE of Appearance by GREGORY KENT RETTIG on behalf of All Defendants (RETTIG, GREGORY) (Entered: 10/27/2025) |
| 11/04/2025 | 10 | RESPONSE to Motion re 8 MOTION to Remand filed by BRYAN F AYLSTOCK, AYLSTOCK WITKIN KREISS & OVERHOLTZ PLLC. (Attachments: # 1 Exhibit Detail by Entity Name) (RETTIG, GREGORY) (Entered: 11/04/2025) |
| 11/04/2025 | 11 | MOTION to Dismiss by BRYAN F AYLSTOCK, AYLSTOCK WITKIN KREISS & OVERHOLTZ PLLC. (Internal deadline for referral to judge if response not filed earlier: **11/18/2025**). (RETTIG, GREGORY) (Entered: 11/04/2025) |
| 11/05/2025 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 10 Response to Plaintiff's Motion to Remand, 11 MOTION to Dismiss. Referred to ZACHARY C BOLITHO. (alb) (Entered: 11/05/2025) |
| 11/06/2025 | 12 | ORDER, re 10 Response to Motion. The Court believes it would benefit from hearing from Plaintiff in reply. Accordingly, Plaintiff may file a reply to Defendant's response. The reply should not exceed 10 pages, and it should be filed within 14 days of this order. ( Replies due by **11/20/2025**.) Signed by MAGISTRATE JUDGE ZACHARY C BOLITHO on 11/6/2025. (alb) (Entered: 11/06/2025) |
| 11/17/2025 | 13 | Plaintiff's Reply to Defendants' Response to 8 MOTION to Remand, filed by RICKY DEAN KELLY. (alb) (Entered: 11/18/2025) |
| 11/17/2025 | 14 | Plaintiff's MOTION for Extension of Time to File Reply to Defendants' 11 MOTION to Dismiss, by RICKY DEAN KELLY. (alb) (Entered: 11/18/2025) |
| 11/18/2025 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 13 Plaintiff's Reply to Defendants' Response to Motion to Remand, 14 MOTION for Extension of Time to File a Reply as to 11 MOTION to Dismiss. Referred to ZACHARY C BOLITHO. (alb) (Entered: 11/18/2025) |

| 11/18/2025 | 15 | ORDER granting 14 Motion for Extension of Time to File Reply as to 11 MOTION to Dismiss. (Internal deadline for referral to judge if response not filed earlier: **12/9/2025**). Signed by MAGISTRATE JUDGE ZACHARY C BOLITHO on 11/18/2025. (alb) (Entered: 11/18/2025) |
| 11/19/2025 | 16 | NOTICE *of Prior or Similar Case Filing* by BRYAN F AYLSTOCK, AYLSTOCK WITKIN KREISS & OVERHOLTZ PLLC (RETTIG, GREGORY) (Entered: 11/19/2025) |
| 11/19/2025 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE ZACHARY C BOLITHO notified that action is needed Re: 16 Notice of Prior or Similar Case Filing. (alb) (Entered: 11/19/2025) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 11/26/2025 12:46:27 | | | |
| **PACER Login:** | aw000389 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:25-cv-01947-TKW-ZCB |
| **Billable Pages:** | 3 | **Cost:** | 0.30 |

IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT

IN AND FOR ESCAMBIA COUNTY, FLORIDA

CIVIL DIVISION

RICKY DEAN KELLY,
3772 Merk's Place,
Leland, NC 28451,
Pro Se

**Plaintiff,**

v.

BRYAN F. AYLSTOCK,
AYLSTOCK, WITKIN, KREISS & OVERHOLTZ, PLLC,
17 East Main Street,
Suite 200,
Pensacola, Florida 32502,

**Defendants.**

**Case No.:**
**Division:** C ι v ι L

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

**JURY DEMAND ENDORSED HEREIN**

**I. INTRODUCTION**

1. Ricky D. Kelly, a decorated Iraq war veteran, served our nation with honor only to suffer severe hearing damage due to defective earplugs designed to protect him. Trusting

1

in the justice system, he sought legal redress, hiring Aylstock Witkin Kreiss & Overholtz PLLC (AWKO) to champion his cause. Instead of advocacy, Mr. Kelly encountered neglect and deception. AWKO, led by Bryan Aylstock, settled Mr. Kelly's deeply personal claim without his informed consent, crucial discussions, or even basic courtesy of communication, betraying the very essence of fiduciary duty and legal representation.

2. Repeatedly, Mr. Kelly reached out, seeking clarity and reassurance about his case, only to be met with silence or empty promises. This pattern of disregard culminated in a settlement that disregarded Mr. Kelly's rights and interests, decided unilaterally and under terms that served the firm, not the client. Mr. Kelly's trust was not just ignored but exploited, turning his quest for justice into a struggle against those he believed were on his side.

## II. JURISDICTION

3. Subject Matter Jurisdiction: This Court has subject matter jurisdiction over the claims presented in this complaint pursuant to the laws of the State of Florida, as the matters in controversy arise under the statutes and common law of Florida. The Florida Circuit Court is vested with the authority to adjudicate cases involving such legal claims and disputes as set forth in the complaint.

4. Personal Jurisdiction: This Court has personal jurisdiction over the parties in this case because the defendant(s) reside in, conduct business in, or have committed actionable events within Escambia County, Florida. Furthermore, the events or omissions giving rise to the claims occurred within Escambia County, thereby establishing sufficient contacts with this jurisdiction to permit the Court to exercise personal jurisdiction in accordance with the principles of due process under the laws of the State of Florida.

## III. PARTIES

5. Plaintiff - Ricky Dean Kelly is an individual with his domicile at 3772 Merk's Place, Leland, North Carolina, 28451.

6. Defendant - Bryan F. Aylstock is an individual with his domicile in Pensacola, Florida. Mr. Aylstock is being sued in his individual capacity.

7. Defendant - Aylstock, Witkin, Kreiss & Overholtz PLLC is a law firm organized and existing under the laws of the State of Florida with its principal place of business located

2

at 17 East Main Street, Suite 200, Pensacola, Florida, 32502. The firm is a citizen of Florida for jurisdictional purposes.

## IV. GENERAL ALLEGATIONS

8. On August 29, 2019, Plaintiff Ricky D. Kelly, a decorated Iraq War veteran, entered into a contractual relationship with the law firm Aylstock, Witkin, Kreis & Overholtz, PLLC (hereafter referred to as "AWKO"), to represent him in a lawsuit regarding defective 3M earplugs which a caused him severe hearing damage and tinnitus.

9. Plaintiff was contacted by a female employee at AWKO on August 29th 2019. She insisted that the contract needed to be signed that day and assured Plaintiff that his attorney would subsequently contact him to discuss his case and answer any questions regarding the contingency contract. She also promised plaintiff to forward him a copy once it was fully executed.

10. Despite these assurances, Plaintiff never received a fully executed copy of the contract and Plaintiff was never contacted by his attorney to discuss the specifics of his case or the details of his contract until months after Defendant agreed to the aggregate settlement. As of present, Plaintiff has never been provided the opportunity to fully detail his case to Defendant.

11. Throughout the subsequent years leading up to August 29th 2023, Plaintiff made multiple attempts to communicate with AWKO to discuss his case and obtain updates specific to his situation. Every attempt was met with generic responses stating the updates were general MDL updates and not specific to his case. Plaintiff was informed that AWKO were unable to provide any information specific to your individual case.

12. During the same period, Plaintiff made contact with AWKO to verify the firm had everything needed for his case in emails dated May 20th 2022, June 24th 2022 and July 18th 2023. Defendant failed to respond to any of those emails.

13. On June 21, 2022, Plaintiff's case was filed in the North Florida Federal Court under civil action number 7:20-cv-36595.

14. Despite repeated inquiries and requests for information, Plaintiff received no substantive responses from AWKO or information specific to his case from August 29th 2019 through August 29th 2023.

15. On August 29, 2023, without Plaintiff's informed consent or any prior discussions with Plaintiff regarding any specifics of his case or his possible settlement options, Bryan Aylstock of AWKO unilaterally entered into an aggregate settlement that included Plaintiff's claims.

16. Defendant settled the lawsuit at the time when the MDL Court was making preparations to remand cases to their respective districts for trial. In the last minute before these cases were to be remanded, Defendant settled the case for six billion which was not in the best interest of the Plaintiff despite one year earlier on a public radio station, Mr. Aylstock stated that 3M's exposure to this lawsuit was north of one trillion. Placing his interests above Plaintiff in making the settlement, Mr. Aylstock ignored the welfare of his client.

17. Plaintiff discovered the settlement of his case after the fact, and learned that his case had been settled without a proper evaluation of its merits or his specific circumstances, and crucially, without his informed consent. Defendant failed to provide plaintiff with any of the disclosures required when settling claims of multiple clients.

18. Subsequent communications from AWKO, including emails from Bryan Aylstock and Julie Orshell, acknowledged that they had not discussed the specifics or complexities of Plaintiff's case with him prior to the settlement.

19. On September 13th 2023, Plaintiff received an email from an employee named Julie Orshell at AWKO. Her email stated that we can't speculate on possible values of your case, despite Defendant settling his case on August 29th, 2023.

20. On September 13th 2023 Julie Orshell from AWKO, in a phone conversation, and under false pretenses, misled plaintiff by assuring him that his attorney would not withdraw from representing him in the 3M case after opting out if he chose to proceed with an additional lawsuit concerning the Iran Terror case, which influenced plaintiff's decision to sign the additional contingency contract.

21. On January 8, 2024, Bryan Aylstock admitted in an email to Plaintiff that they had not yet reviewed all pertinent medical records or discussed the complexities of Plaintiff's case, despite having already settled the case months prior.

23. Plaintiff continued to request a copy of his contingency contract 13 times between September 1, 2023, and October 24, 2023, which AWKO failed to provide until it was too late for Plaintiff to seek alternative legal representation due to the submission of the identification report to the court.

4

24. Defendant further restricted Plaintiff's option to obtain alternative council due to the restrictions on lawyers right to practice clause that defendant negotiated into the aggregate settlement agreement violating rule 4-5.6(b) of the Florida rules of professional conduct

25. In 2024, Plaintiff became aware that defendant failed to provide a three day right to withdraw from the contingency contract and failed to provide plaintiff with a statement of clients rights as required by the Florida rules of professional conduct 4-1.5.

26. Defendant, Bryan Aylstock, serving dual roles as plaintiff's attorney and serving as the primary attorney for the MDL Plaintiff Steering Committee. Mr. Aylstock failed to inform plaintiff of his dual roles, which Plaintiff believes caused a conflict of interest. Mr. Aylstock negotiated terms in the aggregate settlement that placed his interests and those of the MDL settlement above those of his client, Mr. Kelly.

27. Had Mr.Aylstock followed his basic duties to inform his client about the aggregate settlement and its terms before he agreed to settle, Plaintiff would have informed Mr. Aylstock that his consent would not be given and this settlement would have not proceeded.

28. Defendant negotiated a clause in the settlement agreement that states he must recommend this settlement to 100% of his clients. This agreement was made before Mr. Aylstock knew the details and possible values of Plaintiffs case.

29. Defendant negotiated other coercive clauses that pressured clients into settling by threatening withdrawal of Defendant's legal representation, placing burdens on Plaintiff's decision to settle a matter.

30. Defendant negotiated additional terms in the settlement that place his interests above those of his client such as allowing himself to cease any further development of clients cases as of the settlement date and withdraw from his clients cases requiring all clients to comply with CMO 57 which requires extensive work and involves most of the pre trial work that the Defendants are paid to complete and still receive their full contingency fee of 40%.

31. Defendant, Mr. Aylstock, made several false and misleading statements from January 2024 through March 2024. Including that settling was in the Plaintiffs best interest, despite Defendant remaining uniformed of Plaintiff's case.

5

32. Plaintiff received an offer of settlement on November 17, 2023 from AWKO for $10,000. The email recommended that Plaintiff accept the settlement. Mr. Aylstock and others at the firm made repeated requests for Mr. Kelly to join settlement stating it was in his best interest. Defendant made these recommendations without evaluating Mr. Kelly's claims.

33. On February 19th, 2024 at 5:45 pm, Plaintiff was abruptly requested by AWKO to provide extensive documentation for a lost wages claim by the end of the day, an unreasonable demand given the timeframe and the age of the required documents, resulting in Plaintiff having to forego his lost wages claim. This was the first request from AWKO for lost wages documents.

33. On March 14th 2024 Defendant Bryan Aylstock revealed confidential information regarding Plaintiff's son's death and the link between Plaintiff's case to a 3M Earplug attorney named Charles Beall, without Plaintiff's consent. Disclosing information detrimental to Plaintiffs case.

34. Defendant failed to have a discussion with Mr. Kelly, as promised, on March 14th 2024 after the hearing in Pensacola to finally discuss his case in detail and his son's potential case against 3M and the relation to Mr. Kelly's case and the death of his son.

35. Defendant failed to discuss this situation in detail with the Plaintiff after repeated requests. Mr. Aylstock was hyper active in pressuring Plaintiff to join settlement and less motivated to understand Plaintiffs case details.

36. Plaintiff's son passed away in 2016, he was a member of the military and suffered hearing damage, and Plaintiff as his father, attempted to inquire about a potential case against 3M for his son's hearing problems he developed while wearing the earplugs and suffered from until his passing in 2016.

37. Defendant made a false statement in his answer to Plaintiffs bar complaint, stating Mr. Kelly's son never wore the earplugs and that his son died of an overdose. Both statements are false.

38. In addition, Defendant would never provide the chance for the Plaintiff to explain the connection between his Plaintiffs case and his son's death, a connection the Plaintiff believes attributed to the death of his son.

39. Mr. Aylstock threat to withdraw from Kelly's representation had a coercion aspect that impinges on the clients right to accept or reject a settlement. Rule 4-1.2(a) of the

6

Florida rules states Lawyer must abide by clients decision concerning the objectives of representation and abide by the clients decision to settle a matter.

40. While pressuring Plaintiff to settle, Plaintiff requested Defendant to explain what "confidential exhibit number 10" meant in the settlement agreement by phone, by Email and in person on many occasions. Mr. Aylstock refused to provide an answer.

41. On March 22nd 2024, the date of the Federal Judges order requiring defendant to continue his representation of Mr. Kelly until the completion of the CMO 57 process, instead, Mr. Aylstock withdrew on that day from representing Plaintiff, directly contravening the court's order and severely impacting Plaintiffs legal rights and interests.

42. Defendant withdrew against a Federal Judge court order and at a time Plaintiff had court ordered requirements due within days of his withdrawal, causing material adverse effects on Plaintiff's case.

43. On October 16th 2024, Plaintiff received a letter from AWKO stating that this letter is to inform you that your case has been dismissed. Plaintiff received this letter seven months after the defendant withdrew, further displaying AWKO's negligence in the handling of Plaintiff's case.

44. Plaintiff filed a complaint with the Florida Bar detailing these issues, emphasizing the lack of communication, failure to obtain informed consent, and other breaches of fiduciary duty by AWKO and specifically, Bryan Aylstock.

45. Documentation supporting Plaintiff's claims includes emails, phone call records, and a detailed complaint filed with the Florida Bar, which outlines the alleged professional misconduct and violations of the rules of professional conduct by AWKO and Bryan Aylstock.

46. This sequence of events and lack of proper legal representation and consultation has led Plaintiff to suffer significant losses, not only in potential compensation for his injuries but also in legal rights and proper representation.


**V. CAUSES OF ACTION**


**COUNT ONE - BREACH OF FIDUCIARY DUTY**

7

47. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

48. In Florida, a claim for breach of fiduciary duty requires the plaintiff to establish the existence of a fiduciary relationship between the plaintiff and defendant, the defendant's breach of duties arising under that fiduciary relationship, and damages proximately caused by the breach.

49. A fiduciary relationship existed between Plaintiff, Ricky D. Kelly, and Defendant, Aylstock, Witkin, Kreiss & Overholtz PLLC, and specifically with Defendant Bryan Aylstock, as evidenced by the legal representation agreement entered into on August 29, 2019, wherein Defendants agreed to represent Plaintiff in litigation concerning defective 3M earplugs that resulted in Plaintiff's severe hearing damage and tinnitus.

50. Defendants breached their fiduciary duties by entering into an aggregate settlement without Plaintiff's informed consent or knowledge, as required under Florida Rule of Professional Conduct 4-1.8(g). Defendants negotiated and agreed to this settlement dated August 29th 2023, without obtaining or evaluating Plaintiffs complete medical records or discussing the complexities of his case with him, as admitted by Defendant Bryan Aylstock in an email dated January 8th 2024.

51. Defendants breached their fiduciary duties by failing to obtain Plaintiff's informed consent in a writing signed by him after full disclosure of the existence and nature of all claims involved including informing each Plaintiff of the material terms of the settlement, obtaining all Plaintiff's informed consent, participation of each person in the settlement and the amount each Plaintiff will receive before the settlement offer is made or accepted.

52. Defendant further breached their fiduciary duties by placing their best interest in the MDL and a global settlement ahead of the Plaintiff best interests causing an attorney/ client conflict of interest.

53. Defendants' breaches of their fiduciary duties were the direct and proximate cause of damages to Plaintiff. Defendants settled Plaintiff's claims without a proper evaluation of the case, thereby undervaluing Plaintiff's claims and coercing him into a settlement that was not in his best interest.

54. This settlement was detrimental to Plaintiff and was negotiated under conditions that placed undue pressure on Plaintiff to settle, as evidenced by the terms of the aggregate settlement, the amount of the settlement was significantly lower than the actual value of Plaintiff's claims.

8

55. As a result of Defendants' breaches of fiduciary duty, Plaintiff suffered damages including but not limited to loss of potential compensation that could have been recovered had his case been properly evaluated and pursued individually as Plaintiff requested throughout the litigation, before a settlement offer was accepted, eliminating any chance for Plaintiff to negotiate an equitable pre-trial settlement. Defendants caused emotional distress, and other consequential damages due to the mishandling of his legal representation.

56. Plaintiff seeks relief for Defendants' breach of fiduciary duty, including disgorgement of fees collected by Defendants, a full accounting of the aggregate settlement, and damages as proven at trial.

**COUNT TWO - FRAUD**

57. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

58. In Florida, a claim for fraud requires the plaintiff to establish: (a) a false statement concerning a material fact; (b) the representor's knowledge that the representation is false; (c) an intention that the representation should induce another to act on it; and (d) consequent injury by the party acting in reliance on the representation.

59. Defendant Bryan Aylstock, through his law firm AWKO, made false statements to Plaintiff concerning the handling and settlement of Plaintiff's claims related to the defective 3M earplugs, which are material facts.

60. Defendant knew these representations were false when made. This is evidenced by Defendant's email dated January 8, 2024, where Mr. Aylstock admitted to Plaintiff that they had not connected to go through all of Plaintiff's audiograms and the complexities of his case, despite previously entering into a settlement agreement.

61. Defendant intended for Plaintiff to rely on these false representations as evidenced by the firm's repeated assurances to Plaintiff that his case was being handled appropriately, and that his attorney would contact him to discuss his case, which never occurred.

62. Plaintiff relied on these false statements by remaining with AWKO under the belief that his case was being actively and appropriately managed and that he would be consulted before any settlement was reached.

9

63. As a direct and proximate result of the reliance on Defendant's false statements, Plaintiff suffered damages including but not limited to entering into an aggregate settlement that was not in his best interest, the loss of opportunity to pursue individual legal claims more favorable to him, and emotional distress from the mishandling of his case.

64. Defendant also made false statement of a material fact in his response to Plaintiff's bar complaint, claiming the case was settled based on the individual assessments of each client's case, which was contrary to the information in Defendant's own emails admitting lack of knowledge about Plaintiff's specific case details.

65. Defendant knew the statement was false when made as evidenced in the emails from Aylstock on January 8th 2024 and Orshell on September 13th 2023.

66. Defendant intended the Florida Bar to act upon his statement in an attempt to avoid accountability. Defendant intended the Plaintiff to act upon the settlement agreement.

67. These actions by Defendant constitute fraud under Florida law, and Plaintiff has suffered damages as a direct and proximate result.

68. Defendants made deceptive statements that Plaintiff must sign the settlement by the final registration day or Plaintiff would not be allowed to join settlement afterwards. This was a false statement of material fact.

69. Defendants knew the statement was false and intended plaintiff act upon it.

70. Defendant misled Plaintiff by offering to drop all of his fees if Plaintiff agreed to settle in an apparent attempt to benefit with a kind gesture, all the while, failing to inform Plaintiff that he negotiated that clause in the settlement that does not allow Defendant to receive funds from Plaintiff who refuse to join settlement by the final registration day.

71. Defendant knew this was false when the statement was made. Defendant intended on Plaintiff to act upon it. The statement is a false statement of a material fact.

72. These actions by Defendant constitute fraud under Florida law, and Plaintiff has suffered damages as a direct and proximate result.

73. Plaintiff was coerced into signing additional legal agreements under false pretenses, including a contingency contract for an unrelated legal matter, based on assurances from

Defendant's firm that his attorney would not withdraw from his 3M case if plaintiff chose to opt out of the settlement agreement.

74. This was a false statement of a material fact. Defendant knew the statement was false and intended Plaintiff to act upon it.

75. Plaintiff acted upon the fraudulent statement and signed the contingency contract. Shortly after the defendant withdrew from the Plaintiff's 3m case, he withdrew from the Iran terror suit.

76. The Defendants fraudulent statement lead Plaintiff to sign an agreement allowing AWKO to represent Plaintiff in the Iran Terror Lawsuit. Plaintiff was damaged to the extent he could not find replacement council for his particular injuries because the firms he contacted had stopped adding new clients and was unable to pursue his claims for his injuries relating to an IED blast in Iraq.

77. AWKO's deceptive actions halted Plaintiff's efforts to hold Iran accountable for permanent injuries for which he was awarded the Purple Heart. Previous cases proved to be very favorable to prior veterans.

78. Defendant's actions and those of his law firm AWKO deprived Plaintiff of his right to make informed decisions regarding his legal representation and settlement options, directly resulting from their fraudulent conduct.

## COUNT THREE - LEGAL MALPRACTICE/NEGLIGENCE

79. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

80. The duty of care required of a legal professional in Florida mandates that an attorney must act with the level of care, skill, and diligence, which is recognized as acceptable and appropriate by reasonably prudent similar attorneys under similar circumstances.

81. Defendant, Aylstock Witkin Kreiss & Overholt PLLC, and specifically Attorney Bryan Aylstock, owed a duty of care to Plaintiff, Ricky D. Kelly, to competently represent and advise him regarding his claims related to defective 3M earplugs, which caused him severe hearing damage and tinnitus.

82. Defendant failed to obtain Plaintiffs informed consent regarding his representation involving multiple clients. Conflicts of interest are present involving payments to

11

Plaintiff's with no medical documentation or proof of injury and fraud currently being investigated on payments of settlement funds to foreign citizens.

83. Defendant breached his duties when he failed to provide Plaintiff with a copy of his contingency contract at a critical time specifically between September 1st 2023 through October 21st 2023, eradicating any chance to obtain another professional opinion and the possibility of replacing his representation.

84. Defendant also brushed aside multiple requests for answers to questions about the settlement agreement, including withholding information on confidential exhibit 10, while pressuring Plaintiff to sign settlement.

85. Defendant breached his duty by failing to communicate with Plaintiff about significant aspects of his case, including but not limited to the evaluation of Plaintiff's individual claim, and the strategy for pursuing Plaintiff's legal rights.

86. Defendant also failed to provide Plaintiff with a copy of the executed representation agreement and did not discuss the terms or implications of the common representation with Plaintiff, which are critical for informed consent under Florida law.

87. Defendant's abrupt withdrawal, in defiance of a court order, directly forced Plaintiff into the settlement of his claims under terms that were not authorized or agreed upon by Plaintiff, thereby denying Plaintiff the opportunity to fully pursue his legal claims against 3M for the damages he suffered due to the defective earplugs.

88. Defendant disclosed information about plaintiffs case to the 3M attorney without consent of plaintiff. Mr. Aylstock would never discuss his son's potential claim for hearing problems he suffered from while he was alive or discuss with Plaintiff the impacts of his Tinnitus that had a direct connection to and was a considerable factor that related to the death of Plaintiff's son, Patrick C. Kelly in April 2016.

89. Defendants negligence was a direct cause Plaintiff could not pursue the claims of his sons hearing loss or the plaintiff's tinnitus claims related to the loss of his son.

90. Defendant refused to answer questions about the aggregate settlement agreement after Plaintiff made multiple attempts by phone and emails to understand the settlement contract to make an informed decision.

91. Defendant's failure to perform a full evaluation of Plaintiff's case, to communicate the status and strategy of the case, constitutes negligence.

12

92. Defendant's misrepresentations to Plaintiff regarding the handling of his case and the settlement process, as well as the failure to follow through on promises made regarding communication and case evaluation, further evidence Defendant's negligence and breach of duty.

93. Defendant's actions and inactions have caused Plaintiff significant harm, necessitating this action for legal malpractice and negligence to recover the damages suffered due to Defendant's professional negligence.

## VI. DEMAND

WHEREFORE, Plaintiff Ricky D. Kelly respectfully prays this Court:

A. Grant judgment in favor of Plaintiff on all claims and for the remedies sought in each claim;

B. Issue a judicial determination of the rights, duties, and obligations of the parties hereto;

C. Enjoin Defendant Aylstock Witkin Kreiss & Overholt PLLC from engaging in any further aggregate settlements without the informed consent of all represented clients, as required under Florida Rule of Professional Conduct 4-1.8(g);

D. Order a full accounting and disgorgement of all fees improperly obtained by Defendant through the aggregate settlement process, ensuring transparency and adherence to ethical standards;

E. Award Plaintiff damages in an amount to be determined at trial, reflecting the true value of his claims had they been individually evaluated and pursued.

F. Grant Plaintiff the maximum economic, non-economic, actual, statutory, emotional, general, special, punitive, and other damages available under the law, including but not limited to those provided under Florida Statutes and the applicable Rules of Professional Conduct;

G. Award Plaintiff attorney fees, with the appropriate multiplier, plus costs and expenses of litigation, ensuring full compensation for the legal services required to rectify the harm caused by Defendant's actions;

13

H. Award Plaintiff such other relief that the Court deems just and appropriate under the circumstances to fully address the extent of the harm suffered and to prevent future occurrences of similar misconduct.

**JURY DEMAND:**

PLAINTIFF HEREBY DEMANDS A JURY ON ALL TRIABLE MATTERS.

Respectfully Submitted,

Ricky D. Kelly
3772 Merk's place
Leland NC 28451

Pro-Se

14

# EXHIBIT B

JURY

# U.S. District Court
# Northern District of Texas (Fort Worth)
# CIVIL DOCKET FOR CASE #: 4:25-cv-01255-Y

Canup v. Aylstock et al
Assigned to: Senior Judge Terry R Means
Case in other court: 67th Judicial District Court, Tarrant County, TX, 067-371499-25
Cause: 28:1332 Diversity-Notice of Removal

Date Filed: 11/05/2025
Jury Demand: Plaintiff
Nature of Suit: 190 Contract: Other Contract
Jurisdiction: Diversity

## Plaintiff

**Brandon Canup**                    represented by  **Brandon Canup**
4812 Hidden Oaks Ln
Arlington, TX 76017
972-762-4314
Email: canup.brandon@gmail.com
PRO SE

V.

## Defendant

**Bryan F. Aylstock**

## Defendant

**Bobby Bradford**

## Defendant

**Michael Burns**

## Defendant

**Cliff Roberts**

## Defendant

**Gregory Brown**                    represented by  **Gregory Donald Brown**
*pro se*                                              Fleming Nolen & Jez LLP
2800 Post Oak Blvd
Suite 4000
Houston, TX 77056
713-621-7944
Fax: 713-621-9638
Email: gregory_brown@fleming-law.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

## Defendant

**Alystock Witkin Kreis & Overholtz PLC**

**Defendant**

**Fleming Nolen & Jez LLP**

**Defendant**

**Mostyn Law Firm PC**

| Date Filed | # | Docket Text |
|---|---|---|
| 11/06/2025 | 1 | NOTICE OF REMOVAL filed by Gregory Donald Brown, Alystock, Witkin, Kreis & Overholtz, PLL. In each Notice of Electronic Filing, the judge assignment is indicated, and a link to the Judges Copy Requirements and Judge Specific Requirements is provided. The court reminds the filer that any required copy of this and future documents must be delivered to the judge, in the manner prescribed, within three business days of filing. Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas must seek admission promptly. Forms and Instructions found at www.txnd.uscourts.gov, or by clicking here: Attorney Information - Bar Membership. If admission requirements are not satisfied within 21 days, the clerk will notify the presiding judge. (Attachments: # 1 Exhibit(s) Plaintiff's State Court Petition, # 2 Exhibit(s) State Court Docket Sheet) (Sorrels, Randy) (Entered: 11/06/2025) |
| 11/06/2025 | 2 | New Case Notes: A filing fee has not been paid. No prior sanctions found. (For court use only - links to the national and circuit indexes.) File to: appropriate staff attorney. Pursuant to Misc. Order 6, Plaintiff is provided the Notice of Right to Consent to Proceed Before A U.S. Magistrate Judge. Clerk to provide copy to plaintiff if not received electronically. (jnp) (Entered: 11/06/2025) |
| 11/06/2025 | 3 | Notice and Instruction to Pro Se Party (jnp) (Entered: 11/06/2025) |
| 11/06/2025 |  | ***Clerk's Notice of delivery: (see NEF for details) Docket No:2, 3. Thu Nov 6 09:37:25 CST 2025 (crt) (Entered: 11/06/2025) |
| 11/10/2025 | 4 | NOTICE of Filing Executed Return of Service filed by Brandon Canup (jnp) (Entered: 11/10/2025) |
| 11/10/2025 | 5 | Appendix in Support filed by Brandon Canup re: 4 Notice of Filing Executed Return of Service (jnp) (Entered: 11/10/2025) |
| 11/10/2025 | 6 | CERTIFICATE OF SERVICE by Brandon Canup re 5 Appendix in Support, 4 Notice (Other) *Corrected Certificate of Service* (Canup, Brandon) (Entered: 11/10/2025) |
| 11/21/2025 | 7 | SUMMONS Returned Unexecuted as to Gregory Brown, Cliff Roberts. (Attachments: # 1 Affidavit(s) Attempted Service on Defendant Gregory Brown, # 2 Affidavit(s) Attempted Service on Defendant Cliff Roberts) (Canup, Brandon) (Entered: 11/21/2025) |
| 11/21/2025 | 8 | First MOTION to Remand filed by Brandon Canup with Brief/Memorandum in Support. (Attachments: # 1 Proposed Order) (Canup, Brandon) (Entered: 11/21/2025) |
| 11/21/2025 | 9 | Appendix in Support filed by Brandon Canup re 8 First MOTION to Remand (Canup, Brandon) (Entered: 11/21/2025) |

| PACER Login: | aw000389 | Client Code: | |
| --- | --- | --- | --- |
| Description: | Docket Report | Search Criteria: | 4:25-cv-01255-Y |
| Billable Pages: | 2 | Cost: | 0.20 |

FILED
TARRANT COUNTY
10/27/2025 1:29 PM
THOMAS A. WILDER
DISTRICT CLERK

CAUSE NO. _____ 067-371499-25

| | |
|---|---|
| BRANDON CANUP, | IN THE _____ |
| Plaintiff | DISTRICT COURT |
| v. | |
| BRYAN F. AYLSTOCK, BOBBY BRADFORD, MICHAEL BURNS, CLIFF ROBERTS, GREGORY BROWN, AYLSTOCK WITKIN KREIS & OVERHOLTZ PLC, FLEMING NOLEN & JEZ LLP and MOSTYN LAW FIRM PC, | TARRANT COUNTY, TEXAS |
| Defendants | |

## PLAINTIFF'S ORIGINAL PETITION

COMES NOW Plaintiff, Brandon Canup, appearing pro se, and files this Original Petition against the Defendants named herein. Plaintiff makes this filing based on personal knowledge as to all matters concerning himself and upon information and belief as to all other matters. In support thereof, Plaintiff respectfully shows the Court as follows:

## I.

## DISCOVERY CONTROL PLAN

ORIGINAL PETITION                                                  **PAGE**          1

1.1     Plaintiff pleads that discovery should be conducted in accordance with discovery control plan, level 3, pursuant to Rule 190 of the Texas Rules of Civil Procedure.

## II.

## PARTIES

### A.     Plaintiff

2.1     Brandon Canup ("Canup") is an individual residing in Tarrant County, Texas.

### B.     Defendants

2.2     Aylstock, Witkin, Kreis & Overholtz, P.L.C. ("AWKO") is a foreign professional limited liability company formed under the laws of Florida, doing business in Texas. Its principal office is located at 17 East Main Street, Suite 200, Pensacola, Florida 32502. AWKO may be served via its registered agent for service of process: Justin Witkin, 17 East Main Street, Suite 200, Pensacola, Florida 32502, or wherever it may be found. In the event AWKO does not maintain a registered agent or cannot otherwise be located with reasonable diligence, it may be served through the Texas Secretary of State as provided by *Tex. Bus. Orgs. Code § 5.251* and *Tex. Civ. Prac. & Rem. Code §§ 17.041–17.045.*

2.3     Mostyn Law Firm, P.C. ("Mostyn") is a Texas professional corporation formed under the laws of Texas, with its principal office at 3810 W. Alabama Street,

Houston, Texas 77027-5204. Mostyn may be served via its registered agent for service of process: Andrew Browning, at the same address, or wherever it may be found.

2.4    Fleming, Nolen & Jez, L.L.P. ("FNJ") is a Texas limited liability partnership with its principal office located at 2800 Post Oak Blvd., Suite 6000, Houston, Texas 77056-6128. FNJ may be served via a General Partner for service of process: George Fleming, at the same address, or wherever it may be found. Because FNJ does not have a registered agent listed on file with the Texas Comptroller as of the date of this filing, it may also be served with process through the Texas Secretary of State pursuant to *Tex. Bus. Orgs. Code § 5.251*, who shall forward process to FNJ's last known address on file.

2.5    Bryan Frederick Aylstock ("Aylstock") is an attorney licensed in the State of Florida (Florida Bar No. 78263), and a founding partner of AWKO. He may be served at his primary business address: Aylstock, Witkin, Kreis & Overholtz, PLC, 17 East Main Street, Suite 200, Pensacola, Florida 32502, or wherever he may be found. If service cannot with reasonable diligence be effected at this address, then pursuant to the Texas long-arm statute, service may be made on the Texas Secretary of State as agent for service of process for this Defendant.

2.6    Bobby J. Bradford ("Bradford") is an attorney licensed in the State of Florida (Florida Bar No. 173223) and a partner at AWKO. He may be served at at

ORIGINAL PETITION                                                                                    **PAGE**        3

his primary business address: Aylstock, Witkin, Kreis & Overholtz, PLC, 17 East Main Street, Suite 200, Pensacola, Florida 32502, or wherever he may be found. If service cannot with reasonable diligence be effected at this address, then pursuant to the Texas long-arm statute, service may be made on the Texas Secretary of State as agent for service of process for this Defendant.

2.7    Michael Andrew Burns ("Burns") is an attorney licensed in the State of Florida (Florida Bar No. 973130). At all times relevant to this case, he was affiliated with Mostyn Law Firm, a Texas-based law firm. He may be served at his Florida business address: Burns Law LLC, 362 Gulf Breeze Parkway, #294, Gulf Breeze, Florida 32561-4492, or wherever he may be found. If service cannot with reasonable diligence be effected at this address, then pursuant to the Texas long-arm statute, service may be made on the Texas Secretary of State as agent for service of process for this Defendant.

2.8    Gregory Donald Brown ("Brown") is an attorney licensed in the State of Texas (Texas Bar No. 24078266). At all times relevant to this case, he was affiliated with FNJ. Brown is listed as an attorney at FNJ on their website and as an attorney at Sorrels Law on his Texas State Bar profile. He may be served at his primary business address: Sorrels Law, 230 Westcott St., Ste. 100, Houston, Texas 77007, or at Fleming, Nolen & Jez, LLP, 2800 Post Oak Blvd., Suite 6000, Houston, Texas 77056-6128, or wherever he may be found.

2.9     Cliff Lee Roberts ("Roberts") is an attorney licensed in the State of Texas (Texas Bar No. 17002900). He may be served at his business address: 8191 Southwest Freeway, Suite 116, Houston, Texas 77074-1700, or wherever he may be found.

2.10    For ease of reference, Defendants AWKO, Mostyn, Aylstock, Bradford, and Burns may collectively be referred to as the ("Florida Defendants"). Although Mostyn is a Texas law firm, it is included in this group because of its affiliation with Burns, a Florida-based attorney, and its role in the conduct giving rise to this case.

2.11    Defendants FNJ, Brown, and Roberts may collectively be referred to as the ("Texas Defendants").

2.12    All Defendants may collectively be referred to as the ("Defendants").

## III.

## JURISDICTION AND VENUE

3.1     This Court has subject matter jurisdiction over this action pursuant to Section 24.007, et seq. of the Texas Government Code. The amount in controversy exceeds the Court's minimum jurisdictional requirements, exclusive of interest and costs, and the relief sought is within the jurisdictional limits of this Court.

3.2     This Court has personal jurisdiction over all named Defendants. One or more Defendants are residents of Texas, maintain their principal place of business

ORIGINAL PETITION                                                    **PAGE**        5

in Texas, and/or regularly conduct business in Texas. Additionally, pursuant to the Texas Long-Arm Statute, *Tex. Civ. Prac. & Rem. Code §§ 17.041–17.069*, this Court may exercise jurisdiction over out-of-state Defendants who have purposefully directed activities toward Texas. Out-of-state Defendants purposefully directed activities toward Texas, including but not limited to: providing legal services to a Texas resident, accessing confidential records of a Texas resident, and appearing and purporting to act on behalf of a Texas resident in litigation proceedings connected to Texas, including matters designated for trial in the Northern District of Texas. Furthermore, all out-of-state Defendants performed common benefit work in the underlying litigation entitling them to collect fees from thousands of Texas Residents. Out-of-state Defendants have purposefully availed themselves of the privileges and benefits of conducting business in Texas and are subject to the jurisdiction of this Court. These actions demonstrate the Defendants' purposeful involvement in matters connected to Texas, making it both appropriate and consistent with due process for a Texas court to exercise jurisdiction over them.

3.3    Venue is proper in this Court pursuant to Section 15.001, *et seq.* of the Texas Civil Practice and Remedies Code. All or a substantial part of the harm resulting from Defendants' conduct was suffered by Plaintiff in Tarrant County, Texas, where Plaintiff resides and relied upon Defendants' actions and representations. Additionally, this lawsuit concerns contracts and attorney-client

relationships that were to be performed, in whole or in part, in Tarrant County. Plaintiff's case was designated for trial in the United States District Court for the Northern District of Texas, and Tarrant County was the central location of Plaintiff's litigation preparation, reliance on Defendants, and resulting injury.

## IV.

## STATEMENT PURSUANT TO RULE 47

4.1    Pursuant to Rule 47 of the Texas Rules of Civil Procedure, Plaintiff states that he seeks monetary relief of less than $250,000, including damages of any kind, penalties, costs, expenses, pre and post-judgment interest. Plaintiff further affirms that he seeks less than $75,000 in monetary damages, exclusive of interest and costs.

## V.

## BACKGROUND FACTS

5.1    On April 3, 2019, the United States Judicial Panel on Multidistrict Litigation transferred multiple actions to the Northern District of Florida for coordinated pretrial proceedings in *In re: 3M Combat Arms Earplug Products Liability Litigation*, Cause No. 3:19-md-02885 ("MDL").

5.2    On May 22, 2019, the MDL court issued Pretrial Order No. 7, appointing various plaintiffs' attorneys to leadership roles ("PSC") to conduct common benefit

work on behalf of all claimants in the MDL. These appointments were set to expire after one year unless renewed.

5.3    On June 21, 2019, Canup retained Texas Defendants Brown, FNJ, and Roberts, to investigate, develop, and litigate his claims in the MDL. Despite this agreement, Texas Defendants failed to meaningfully investigate Canup's injuries or develop his case during their years of representation.

5.4    On August 29, 2023, a global settlement agreement ("MSA") was announced between 3M and Plaintiffs' Leadership in the MDL. The agreement imposed obligations on plaintiffs' attorneys to recommend settlement to 100% of their clients, to withdraw from representation of any claimant who declined to participate and other terms that were hidden from Plaintiffs in the MDL in Exhibit 10 of the MSA. These provisions created undisclosed conflicts of interest between attorneys and their clients.

5.5    Canup received several letters and emails from Texas Defendants pressuring him to accept the settlement, warning that rejection would result in withdrawal of representation, delayed access to trial, and onerous litigation deadlines. However, Texas Defendants never disclosed the full terms of the settlement, including Exhibit 10, which contained material provisions.

5.6    Following multiple communications from Texas Defendants indicating their intent to withdraw if Canup declined to participate in the global settlement,

Canup retained attorney David Gamble ("Gamble") in January 2024. At the time, Texas Defendants were still counsel of record for Canup in the MDL but did not provide substantive legal support. Canup retained Gamble to preserve his ability to litigate, anticipating Texas Defendant's formal withdrawal and recognizing their abdication of duty.

5.7     On January 21, 2024, Canup officially opted out of the MSA triggering his production obligations under Case Management Order 57 ("CMO 57"). Canup and Gamble immediately began preparing for the CMO 57 production requirements which included gathering, organizing, and submitting over 25 GB of data within 30 days under threat of dismissal with prejudice. Despite knowing of these requirements for months, Texas Defendants did not assist in meeting these obligations. Brown filed a motion to withdraw as counsel of record for Canup in the MDL within a week of Canup's CMO 57 production deadline. His motion was granted one day before the CMO 57 deadline.

5.8     Canup requested his file from FNJ in January of 2024. Canup received a few documents but never his full file. FNJ sent Gamble Canup's file which only contained a single four-page pdf.

5.9     On February 5, 2024 Canup was ordered by the MDL Court to appear "in person, with counsel" at a status conference in Pensacola, Florida scheduled for March 13, 2024. In preparation for the March 13, 2024 status conference Bradford

contacted Gamble seeking privileged and confidential information about Canup and his case against 3M and to give advice about the settlement programs in the MSA. Gamble and Bradford spoke several times about Canup's case including but not limited to his medical claims and potential recovery. Bradford informed Gamble that Aylstock and Bradford would be present at the status conference but never informed Gamble of Florida Defendants' intent to make a formal appearance.

5.10    Unbeknownst to either Canup or Gamble, Florida Defendants made a formal appearance in the MDL Court on Canup's behalf at the March 13, 2024 status conference. The hearing transcript lists Aylstock and Bradford from AWKO and Burns from Mostyn as appearing "FOR THE PLAINTIFF." Aylstock participated in the hearing by addressing the MDL Court on the record speaking about the MSA in an attempt to convince Canup to accept the global settlement offer.

5.11    Following the first hearing, Canup and Gamble were led to a conference room where Magistrate Judge Hope Cannon conducted a closed-door settlement conference. This settlement conference was a second official proceeding on March 13, 2024. Judge Cannon brought in Aylstock, Bradford, and Burns, who then gave individual legal advice, reviewed Canup's medical records and discussed Canup's case directly with Canup. The medical documents that were already in Florida Defendants' possession when they entered the room included but were not limited to audiograms and post-deployment health assessments from Canup's time in the US

Army. These confidential and privileged documents were not provided to Florida Defendants by Canup or Gamble. Florida Defendants had gained access to these confidential and privileged documents from another source unknown to Canup or Gamble.

5.12 During that discussion, Aylstock, Bradford, and Burns attempted to pressure Canup to accept the MSA which Canup had already expressly rejected. Florida Defendants were formerly part of the PSC in the MDL and were bound by the terms of the MSA. Florida Defendants did not disclose that their continued compensation was contingent upon claimant participation levels in the MSA, they did not disclose the full terms of the MSA including Exhibit 10, nor did they inform Canup of the conflict created by the MSA's provisions requiring them to recommend settlement to 100% of claimants and to withdraw from clients who opted out. They also failed to disclose that they were making another formal appearance in this second proceeding in the MDL Court on Canup's behalf.

5.13 Florida Defendants' conduct and formal appearances as Canup's counsel created, at minimum, an implied attorney-client relationship, and arguably an express attorney-client relationship. Bradford reached out to Gamble to obtain confidential and privileged information and to discuss Canup's case strategy prior to the proceedings, conduct consistent with representation. At the hearing itself, Defendants Aylstock, Bradford, and Burns formally appeared "FOR THE

PLAINTIFF" on the record, communicated directly with Plaintiff, gave individualized legal advice, and attempted to pressure him into accepting the MSA. These actions, individually and collectively, establish an implied attorney-client relationship, because they would cause any reasonable client to believe Florida Defendants were acting as his attorneys. The formal appearance on the record not only arguably created an express attorney-client relationship but, at the very least, reinforced and confirmed the implied relationship already created by Florida Defendants' conduct. This imposed fiduciary duties including, but not limited to, the duties of loyalty, candor, honesty, disclosure, and conflict avoidance. Despite these obligations, Defendants failed to disclose their intent to appear, their actual formal appearance, their roles in the settlement conference, or their financial stake in maximizing claimant participation.

5.14    Had Canup known that Florida Defendants would appear on his behalf, he could have satisfied the MDL Court's order to appear "in person, with counsel" without transporting Gamble to Florida. Canup incurred substantial costs for Gamble's airfare, lodging, and time. These are expenses he would not have borne had Florida Defendants fulfilled their duty to disclose their participation.

5.15    After the March hearing, Aylstock, Bradford, and Burns took no further action on Canup's behalf, never filed a notice of withdrawal, and never

explained their involvement. Canup did not become aware of their official appearance until he obtained a transcript of the hearing in January 2025.

5.16    Meanwhile, Canup encountered roadblocks accessing the unredacted Master Long Form Complaint ("Master Complaint"). The master complaint was filed on behalf of all claimants and was referenced by all Short Form Complaints filed by the Plaintiffs in this MDL. When the motion to file this document under seal was filed in 2019 it stated that all counsel of record were sent an unredacted copy. Canup was denied access to this document by FNJ. FNJ later contacted Gamble and recommended that he reach out to the PSC to ask for permission to access the master complaint from PSC.

5.17    In April of 2024 Gamble contacted Bradford to get access to the master complaint. On April 24, 2024, Bradford informed Gamble that he would only release the unredacted complaint if Gamble signed a Common Benefit Work Participation Agreement assigning a 9% interest in any future recovery in Canup's case to the PSC. Canup consented to Gamble's signing the agreement to move forward with the litigation.

5.18    On May 1, 2024, Canup filed an amended complaint and Lexecon non-waiver statement as ordered by the MDL Court on April 17, 2024. The order requiring Canup to amend his pleadings stated that he could not add new allegations or causes of action. 3M moved to dismiss. On July 18, 2024, the MDL Court granted

ORIGINAL PETITION                                              **PAGE**          13

the motion in part, dismissing Canup's hearing-loss-related claims as procedurally barred because they were new allegations and/or causes of action.

5.19    The MDL Court's order stated that Canup's former attorneys never attempted to amend his pleadings to include hearing loss claims, despite representing him for years. The MDL Court cited this as a reason that Canup should not be allowed to add new allegations or causes of action. Canup was harmed by being forced to retain expert witnesses whose work became worthless due to the dismissal of the hearing-loss-related claims, harm that would have been avoided had the Texas Defendants investigated and developed Canup's case as they were legally obligated to do.

5.20    On September 30, 2024, Canup entered into a direct settlement agreement with 3M. Canup's ability to reach this resolution was made possible only through his efforts and the efforts of independent counsel, despite the harm caused by the misconduct of the attorneys named herein.

## VI.

## CAUSES OF ACTION

Alternative Pleadings.  To the extent necessary, each of the claims set forth below is pleaded in the alternative.

### A.    CLAIMS AGAINST TEXAS DEFENDANTS

**Claim 1:  Fraud and Failure to Disclose Facts (pled alternatively as Fraudulent Inducement)**

6.1     Canup restates and realleges all paragraphs above and below as if fully stated herein verbatim, and would further show the Court the following.

6.2     **Material Misrepresentation:** Texas Defendants Brown, Roberts, and FNJ made material representations to Canup, including that they would actively pursue Canup's claims in the MDL and litigate the case on his behalf. These representations were expressly contained in the written contingency fee retainer agreement executed between Canup and Texas Defendants, which promised diligent investigation, development, and prosecution of Canup's claims. These representations were made to induce Canup to sign the agreement and place exclusive control of his case with Texas Defendants.

6.3     **Knowledge of Falsity:** At the time these representations were made, Texas Defendants knew they were false, or at minimum had no reasonable basis to believe them true. FNJ had prior MDL experience and knew that their business model involved securing clients for global settlements without undertaking individualized litigation. Their subsequent conduct, failing to advance Canup's claims for four years, not amending pleadings to preserve critical causes of action, and abandoning Plaintiff just one day before the CMO 57 production deadline, confirms they never intended to perform the promised litigation services.

6.4     **Intent to Induce Reliance:** Texas Defendants made these misrepresentations with the intent and purpose of inducing Canup to rely on them

ORIGINAL PETITION                                                                                                          **PAGE**          15

and execute the contingency fee agreement, thereby binding Canup to pay them a percentage of any recovery while avoiding the cost and effort of actively litigating his claims.

6.5 **Justifiable Reliance:** Canup justifiably relied on these representations by signing the retainer agreement and allowing Texas Defendants to control and manage his claims in the MDL for approximately four years, without seeking alternative representation or taking independent action, in the belief that Texas Defendants were diligently working on his behalf.

6.6 **Injury Caused by Reliance**: As a direct and proximate result of Canup's reliance on Texas Defendants' misrepresentations, Canup suffered injury. The MDL court cited Texas Defendants' failure to amend pleadings and advance his case as a basis for dismissing Canup's hearing-loss claims, which diminished the value of expert reports prepared for the litigation. Texas Defendants' abandonment of Canup before the CMO 57 compliance deadline caused significant stress, confusion, inconvenience, and anxiety, disrupted Canup's daily life for several months, and forced him to devote substantial time and effort to untangling the MDL process and uncovering how his own attorneys were deceiving him.

6.7 Texas Defendants' conduct also contradicts the terms of the written agreement, which stated that Canup retained ultimate authority over settlement decisions and that Texas Defendants would provide full legal support. Instead, Texas

ORIGINAL PETITION

Defendants used the contract to obtain control of Canup's claims, then abandoned those claims for financial reasons when he exercised his right to opt out of the settlement.

6.8     Texas Defendants violated Section 32.46 of the Texas Penal Code when they engaged in the above-described conduct. Texas Defendants acted knowingly and intentionally. Such violations constitute fraud.

6.9     To the extent FNJ is not found directly liable for its own independent misconduct, FNJ is also vicariously liable for any wrongful acts or omissions committed by Brown and/or Roberts in the course and scope of their employment and/or partnership and/or agency under the doctrine of respondeat superior and Texas agency law.

6.10    Accordingly, Canup pleads for, and is entitled to monetary damages in an amount sufficient to compensate him for the harm sustained.

6.11    Because Texas Defendants' conduct was fraudulent and/or malicious, Canup pleads for, and is also entitled to recover exemplary damages in an amount to be determined by the trier of fact. Canup further pleads for expenses and pre- and post-judgment interest at the maximum rate permitted by law.

### Claim 2:  Breach of Fiduciary Duty

6.12    Canup restates and realleges all paragraphs above and below as if fully stated herein verbatim, and would further show the Court the following.

6.13 **Existence of a Fiduciary Duty:** Texas Defendants Brown, Roberts, and FNJ entered into a written contingency fee retainer agreement with Canup to represent him in the MDL. By virtue of this attorney-client relationship, Texas Defendants owed Canup fiduciary duties of loyalty, candor, disclosure, and zealous representation among others. These duties included the obligation to place Plaintiff's interests above their own, to fully inform Plaintiff of all material facts affecting his case, and to diligently pursue his claims.

6.14 **Breach of the Duty:** Texas Defendants breached their fiduciary duties including but not limited to, duty of full disclosure, duty of good faith and fair dealing, duty of care and duty of loyalty in multiple respects. They failed to investigate and develop Canup's case over a four-year period, leading to the MDL court's dismissal of his hearing-loss claims. They concealed material information about the global settlement structure, including Exhibit 10, and failed to disclose that they intended to recommend settlement to all clients regardless of individual circumstances. They also abandoned Canup at a critical stage of litigation, withdrawing representation one day before the CMO 57 compliance deadline, despite having known of those deadlines for months. In addition, Texas Defendants failed to provide Canup with his full client file and withheld the master complaint from him.

ORIGINAL PETITION                                                      **PAGE** 18

6.15 **Causation:** Texas Defendants' breaches directly and proximately caused injury to Canup. Their failure to amend pleadings was specifically cited by the MDL court as a reason for barring and dismissing Canup's hearing-loss claims, which rendered costly expert reports largely useless. Their last-minute withdrawal disrupted Canup's ability to comply with CMO 57 requirements. Their concealment of material settlement information deprived Canup of the ability to make informed decisions regarding his claims.

6.16 **Damages:** As a result of Texas Defendants' breaches, Canup suffered both economic and non-economic damages. Economically, Canup incurred wasted expert fees. Non-economically, Plaintiff endured significant stress, confusion, inconvenience, and anxiety, disruption Canup's daily life for several months, and forced him to devote substantial time and effort to untangling the MDL process and uncovering how his own attorneys were deceiving him.

6.17 To the extent FNJ is not found directly liable, FNJ is also vicariously liable for the breaches of fiduciary duty committed by Brown and/or Roberts in the course and scope of their employment and/or partnership and/or agency under the doctrine of respondeat superior and Texas agency law.

6.18 Accordingly, Canup pleads for, and is entitled to monetary damages in an amount sufficient to compensate him for the harm sustained.

6.19   Because Texas Defendants' conduct was fraudulent and/or malicious, Canup pleads for, and is also entitled to recover exemplary damages in an amount to be determined by the trier of fact. Canup further pleads for expenses and pre- and post-judgment interest at the maximum rate permitted by law.

### Claim 3:  Negligence (pled in the alternative)

6.20   Canup restates and realleges all paragraphs above and below as if fully stated herein verbatim, and would further show the Court the following.

6.21   **Existence of a Duty:** Texas Defendants Brown, Roberts, and FNJ entered into a written contingency fee retainer agreement with Canup to represent him in the MDL. By virtue of this attorney-client relationship, Texas Defendants owed Canup a duty to exercise reasonable care, skill, and diligence commonly possessed and exercised by attorneys similarly situated in the State of Texas. This duty included, but was not limited to, properly investigating and preparing Canup's claims, maintaining adequate communication with the client, meeting applicable court deadlines, and taking reasonable steps to protect Plaintiff's interests before, during, and after withdrawal of representation.

6.22   **Breach of the Duty:** Texas Defendants breached their duty of care in multiple respects. They failed to investigate and develop Canup's case over a four-year period, leading to the MDL court's dismissal of his hearing-loss claims. They concealed material information about the global settlement structure, including

Exhibit 10, and failed to disclose that they intended to recommend settlement to all clients regardless of individual circumstances. They also abandoned Canup at a critical stage of litigation, withdrawing representation one day before the CMO 57 compliance deadline, despite having known of those deadlines for months. In addition, Texas Defendants failed to provide Canup with his full client file and withheld the master complaint from him.

6.23 **Causation:** Texas Defendants' breaches directly and proximately caused injury to Canup. Their failure to amend pleadings was specifically cited by the MDL court as a reason for barring and dismissing Canup's hearing-loss claims, which rendered costly expert reports largely useless. Their last-minute withdrawal disrupted Canup's ability to comply with CMO 57 requirements. Their concealment of material settlement information deprived Canup of the ability to make informed decisions regarding his claims.

6.24 **Damages:** As a result of Texas Defendants' breaches, Canup suffered both economic and non-economic damages. Economically, Canup incurred wasted expert fees. Non-economically, Plaintiff endured significant stress, confusion, inconvenience, and anxiety, disruption Canup's daily life for several months, and forced him to devote substantial time and effort to untangling the MDL process and uncovering how his own attorneys were deceiving him.

6.25   To the extent FNJ is not found directly liable, FNJ is also vicariously liable for the breaches of fiduciary duty committed by Brown and/or Roberts in the course and scope of their employment and/or partnership and/or agency under the doctrine of respondeat superior and Texas agency law.

6.26   Accordingly, Canup pleads for, and is entitled to monetary damages in an amount sufficient to compensate him for the harm sustained.

### B.   CLAIMS AGAINST FLORIDA DEFENDANTS

### Claim 1:   Fraud by Non-Disclosure

6.27   Canup restates and re-alleges all paragraphs above and below as if fully stated herein verbatim, and would further show the Court the following.

6.28   **Failure to Disclose:** Florida Defendants deliberately failed to disclose material facts. Florida Defendants Aylstock, Bradford, and Burns, while acting on behalf of their respective firms AWKO and Mostyn, deliberately failed to disclose that they intended to formally appear as counsel for Canup at the March 13, 2024 status conference and that they intended to formally appear and participate in a closed-door settlement conference concerning Canup's case. By withholding these facts, Florida Defendants concealed their involvement in Canup's case. These omissions occurred despite their knowledge of a court order requiring Canup to appear "in person, with counsel" if represented.

6.29 **Duty to Disclose:** The Defendants had a duty to disclose such facts to Canup. The Florida Defendants' duty to disclose arose from multiple sources:

a) By making a formal appearance on the record, Florida Defendants created at least an implied and arguably an express attorney-client relationship with Canup, triggering fiduciary duties of candor, loyalty, and disclosure. They had a duty to disclose their intent to make a formal appearance.

b) By partially disclosing their intent to attend the March 13, 2024 status conference to Canup through Gamble while concealing their intent to formally appear, Florida Defendants created a duty to disclose the full scope of their role.

c) By seeking privileged and confidential information about Canup and his case against 3M prior to the March 13, 2024 status conference and by obtaining and using Canup's confidential medical records, Defendants assumed fiduciary-like duties of confidentiality and fair dealing, requiring them to disclose their access and intent.

6.30 **Canup's Ignorance:** Canup was ignorant of the facts and did not have an equal opportunity to discover them. Canup had no knowledge that Florida Defendants intended to appear in court on his behalf, nor that they had accessed his private medical records from an undisclosed source. Because these actions were being concealed and misrepresented Canup had no equal opportunity to discover their conduct or protect his own interests before incurring unnecessary expenses and attending the conference under false pretenses.

ORIGINAL PETITION                                                **PAGE**        23

6.31  **Intent to Induce:** Florida Defendants intended Canup to act or refrain from acting based on the nondisclosure. Florida Defendants knew that the MDL Court's order required Canup to appear "in person, with counsel." Their nondisclosure was calculated to induce Canup to continue treating Gamble as his sole counsel and to incur the costs of transporting and compensating him to attend the status conference in Florida. By concealing their intention to appear "FOR THE PLAINTIFF," Florida Defendants prevented Canup from making an informed choice such as declining to bring Gamble, objecting to their unauthorized involvement, or challenging their improper access to his records. Their concealment ensured that Canup remained unaware and passive while Florida Defendants acted in ways that advanced their own interests in the MDL.

6.32  **Reliance and Injury:** Canup relied on the Florida Defendants' nondisclosure, which directly resulted in injury. In reliance on their concealment, Canup unnecessarily paid for Gamble's travel, lodging, and appearance at the Florida status conference, expenses that would not have been incurred had he known Florida Defendants would appear as his counsel. Florida Defendants also accessed and used his confidential medical records without consent, depriving him of control over his case and the opportunity to make informed legal decisions with full knowledge of who was acting on his behalf. These harms, including financial costs and disruption of his autonomy, were the direct and foreseeable result of Florida

Defendants' deliberate concealment of material facts they had a duty to disclose.

6.33   Bryan Aylstock, as a founding partner of AWKO, had actual authority to bind the firm. AWKO and Mostyn Law benefitted directly from the concealment and actions of their employees and partners. As such, both firms are directly liable for the misconduct described herein.

6.34   Florida Defendants' omissions and concealments were intentional, material, and calculated to mislead Canup during a critical phase of litigation. This conduct constitutes actionable fraud by non-disclosure under Texas law.

6.35   To the extent AWKO and Mostyn Law are not found directly liable, they are vicariously liable for the acts and omissions of Aylstock, Bradford, and Burns committed within the course and scope of their employment and/or partnership and/or agency under the doctrine of respondeat superior and Texas agency law.

6.36   Accordingly, Canup pleads for, and is entitled to monetary damages in an amount sufficient to compensate him for the harm sustained.

6.37   Because Florida Defendants' conduct was fraudulent and/or malicious, Canup pleads for, and is also entitled to recover exemplary damages in an amount to be determined by the trier of fact. Canup further pleads for expenses and pre and post-judgment interest at the maximum rate permitted by law.

**Claim 2:  Breach of Fiduciary Duty**

6.38   Canup restates and re-alleges all paragraphs above and below as if fully stated herein verbatim, and would further show the Court the following.

6.39   **Existence of Fiduciary Duty:** By formally appearing on the record as counsel "FOR THE PLAINTIFF" at the March 13, 2024 status conference, and by participating in a closed-door settlement discussion regarding Canup's case, the Florida Defendants created at least an implied and arguably an express attorney-client relationship with Canup. This appearance, coupled with their access to Canup's confidential medical records, imposed fiduciary duties of loyalty, candor, and full disclosure. Having assumed the role of Canup's representatives in court and in private negotiations, Florida Defendants were obligated to act in Canup's best interests, disclose material facts, and avoid self-dealing or deception.

6.40   **Breach of Duty:** Florida Defendants breached their fiduciary duties including but not limited to, duty of full disclosure, duty of good faith and fair dealing, duty of care and duty of loyalty in multiple respects. Florida Defendants breached these fiduciary duties in multiple ways. They deliberately failed to inform Canup of their intent to appear as his counsel, concealed their formal appearance in settlement negotiations, and accessed Canup's confidential medical records without authorization. They further failed to disclose material conflicts of interest, including their obligations under the MSA to secure 100% plaintiff participation and the financial penalties they faced if Canup declined to settle. Florida Defendants also

failed to disclose Exhibit 10 to the MSA which contained material terms to the agreement. Instead of candor and loyalty, Florida Defendants acted in their own financial interests by pressuring Canup toward settlement while depriving him of the opportunity to make informed decisions about his representation and case strategy.

6.41 **Causation:** Florida Defendants' breaches directly caused Canup to act and incur expenses that he otherwise would not have. Because Florida Defendants concealed their intent to formally appear as counsel, Canup reasonably believed Gamble was his only representative and paid to transport and lodge Gamble in Florida for the status conference. Canup was further deprived of the ability to object to Florida Defendants' unauthorized access to his confidential medical records, or to challenge their improper participation in court and settlement proceedings. Their concealment and deception stripped Canup of control over his own case and forced him to rely on incomplete and misleading information.

6.42 **Damages:** As a direct and proximate result of Florida Defendants' misconduct, Canup suffered both financial and significant inconvenience damages. He incurred unnecessary out-of-pocket expenses for Gamble's travel and representation. Florida Defendants' concealment and breaches also forced Canup to spend substantial time, energy, and effort to learn about the role and duties of a lawyer, MDL procedures, settlement structures, and fiduciary obligations, simply to understand how his rights were being compromised. Instead of being able to trust

ORIGINAL PETITION                                                    **PAGE**      27

Defendants, Canup was required to divert time away from his personal and professional life to protect himself from those who owed him loyalty and candor. This disruption and burden are concrete injuries that flow directly from Florida Defendants' breaches of fiduciary duty.

6.43   To the extent AWKO and Mostyn Law are not found directly liable, they are also vicariously liable for the fiduciary breaches committed by Aylstock, Bradford, and Burns committed within the course and scope of their employment and/or partnership and/or agency under the doctrine of respondeat superior and Texas agency law.

6.44   Accordingly, Canup pleads for, and is entitled to monetary damages in an amount sufficient to compensate it for the harm sustained.

6.45   Because Florida Defendants' conduct was fraudulent and/or malicious, Canup pleads for, and is also entitled to recover exemplary damages in an amount to be determined by the trier of fact. Canup further pleads for expenses and pre and post-judgment interest at the maximum rate permitted by law.

### Claim 3:  Fraudulent Inducement

6.46   Canup restates and realleges all paragraphs above and below as if fully stated herein verbatim, and would further show the Court the following.

6.47   **Material Misrepresentation:** Defendants Bradford and AWKO represented to Canup, through Gamble, that if Gamble agreed to allocate a 9%

interest in Canup's recovery in the MDL to PSC, Canup and Gamble would receive full access to the MDL's common benefit work, including the master complaint and other litigation materials. This promise was material because access to the common benefit work was essential for evaluating Canup's claims, preparing pleadings, and ensuring that Canup's case was prosecuted on equal footing within the MDL.

6.48 **Knowledge of Falsity:** At the time Bradford made these representations, he and AWKO had no intention of providing the promised access beyond the master complaint. Bradford and AWKO also knew their representation was false because the master complaint had been filed on behalf of all Plaintiffs in the MDL, and the motion to file it under seal expressly stated that an unredacted copy had already been provided to all counsel of record, making all Plaintiffs in the MDL, including Canup, entitled to it without additional conditions. Bradford and AWKO's subsequent refusal to respond to Canup's request for the remaining common benefit materials demonstrates they knowingly misrepresented their willingness to perform and concealed their true intent.

6.49 **Intent to Induce Reliance:** Defendants Bradford and AWKO made these false promises for the purpose of inducing Canup and or Gamble as an agent of Canup to agree to the 9% common benefit interest. By doing so, Bradford and AWKO sought to secure both financial gain and strategic leverage within the MDL, binding Canup to terms that benefitted Bradford, AWKO and PSC as a whole while

depriving Canup of the resources promised.

6.50 **Reliance:** Canup, through Gamble, reasonably relied on Bradford and AWKO's misrepresentations by entering into the agreement and granting PSC a 9% interest in his recovery. Canup through Gamble did so in the belief that he would receive the full scope of common benefit materials, which were essential to advancing his claims in the MDL.

6.51 **Injury:** As a direct and proximate result of Bradford and AWKO's fraudulent inducement, Canup suffered injury. He incurred the financial burden of allocating 9% of his recovery to PSC while receiving only the master complaint, which he was entitled to without further conditions, and being deprived of the other promised materials. This left Canup disadvantaged in prosecuting his claims, forced him to expend additional time and effort to understand the underlying issues without the benefit of the promised work product, and unjustly enriched Bradford and AWKO at his expense.

6.52 Defendants Bradford and AWKO violated Section 32.46 of the Texas Penal Code when they engaged in the above-described conduct. Defendants Bradford and AWKO committed this conduct knowingly and intentionally. Such violations constitute fraud.

6.53 To the extent AWKO is not found directly liable, it is also vicariously liable for the fraudulent inducement committed by Bradford within in the course and

ORIGINAL PETITION                                                          **PAGE**      30

scope of his employment and/or partnership and/or agency under the doctrine of respondeat superior and Texas agency law.

6.54   Accordingly, Canup pleads for, and is entitled to monetary damages in an amount sufficient to compensate him for the harm sustained.

6.55   Because Bradford and AWKO's conduct was fraudulent and/or malicious, Canup pleads for, and is also entitled to recover exemplary damages in an amount to be determined by the trier of fact. Canup further pleads for expenses and pre and post-judgment interest at the maximum rate permitted by law.

## C.   CLAIMS AGAINST ALL DEFENDANTS

### Claim 1:  Civil Conspiracy

6.56   Canup restates and realleges all paragraphs above and below as if fully stated herein verbatim, and would further show the Court the following.

6.57   **Combination of two or more persons:** Defendants FNJ, Brown, Roberts, Aylstock, Bradford, Burns, AWKO, and Mostyn Law combined and acted together in connection with the MDL. Their actions were coordinated, not isolated, and each Defendant assumed complementary roles under the framework of the MSA which tied their compensation to Plaintiff participation thresholds and withdrawal requirements. This combination reflects a deliberate, concerted effort to protect their financial interests at Canup's expense.

ORIGINAL PETITION                                                                    **PAGE**        31

6.58  **Common object or course of action:** The common object of the conspiracy was to secure maximum Plaintiff participation in the MSA, protect Defendants' fees, and eliminate or marginalize clients unwilling to settle. To accomplish this, Defendants withheld material settlement terms, including Exhibit 10 of the MSA and provisions tying attorney compensation to client participation and mandatory withdrawals, while conditioning access to critical litigation documents on Canup's compliance. The Florida Defendants also concealed their formal appearance as Canup's counsel, depriving him of notice that they were representing him in court and settlement discussions. These coordinated acts were calculated to undermine Canup's autonomy, deprive him of full disclosure, and coerce his participation in the settlement program.

6.59  **Meeting of the minds:** Defendants reached a meeting of the minds through coordinated conduct. Texas defendants abandoned Canup for not agreeing to participate in the MSA. Florida Defendants then formally appeared "FOR THE PLAINTIFF" in court allowing them to pressure Canup, in person, to participate in the MSA. Florida Defendants did this without disclosing their intent to formally appear forcing Canup to take Gamble from Texas to Florida to comply with the MDL Court's order to appear "in person, with counsel" resulting in unnecessary economic pressure on Canup. Texas Defendants then withheld the master complaint, a document that was part of Canup's file, and directed Gamble to obtain it from the

PSC. Bradford and AWKO then conditioned its release on signing a fraudulent participation agreement giving PSC a 9% interest in any recovery in Canup's case. These coordinated acts evidence agreement, whether formal or informal, to act in unison toward their shared objective.

6.60 **Unlawful overt acts:** In furtherance of the conspiracy, Defendants engaged in multiple unlawful overt acts, including:

a) concealing material settlement terms from Canup;

b) concealing their intent to appear, and then appearing as Canup's counsel without authority or disclosure;

c) accessing and reviewing Canup's confidential medical records without authorization;

d) concealing their financial and ethical conflicts tied to the MSA; and

e) requiring Canup's counsel to sign a fraudulent 9% participation agreement as the condition for obtaining the master complaint.

Each of these acts breached duties of candor, loyalty, and disclosure owed to Canup, and unlawfully advanced Defendants' scheme to manipulate settlement participation.

6.61 **Damages:** As a direct and proximate result of this conspiracy, Canup suffered damages. He incurred unnecessary expenses transporting substitute counsel to Florida for a hearing where Florida Defendants secretly appeared on his behalf,

was deprived of access to promised common benefit work, and saw his recovery reduced by the 9% diversion of settlement funds. Canup also suffered significant inconvenience by being forced to investigate and learn about complex legal processes in order to uncover and counteract Defendants' scheme, burdens that arose solely because of Defendants' coordinated misconduct.

6.62   To the extent the law firms named herein are not found directly liable, they are also vicariously liable for the actions of their partners, associates, employees, or agents committed within the scope of employment and in furtherance of the conspiracy.

6.63   Additionally, because Canup's injuries were caused by the joint and concerted actions of multiple Defendants, including acts of fraud, breach of fiduciary duty, and conspiracy, all Defendants are jointly and severally liable under Texas law.

6.64   For the avoidance of doubt, Canup pleads that if any law firm named herein is not found directly liable, it is nonetheless vicariously liable under the doctrine of respondeat superior for the conduct of its partners, agents, or employees acting within the course and scope of their duties.

6.65   Accordingly, Canup pleads for, and is entitled to monetary damages in an amount sufficient to compensate him for the harm sustained.

6.66   Because Defendants' conduct was fraudulent and/or malicious, Canup pleads for, and is also entitled to recover exemplary damages in an amount to be

determined by the trier of fact. Canup further pleads for expenses and pre and post-judgment interest at the maximum rate permitted by law.

# VII.

# DAMAGES

7.1    For each of his claims, Canup demands recovery of all of the following categories of damages as a direct and proximate result of the Defendants' wrongful conduct, which include:

7.2    **Actual Damages**

Canup suffered actual damages totaling **$19,807.35 + common benefit fee set aside from settlement in underlying litigation (common benefit fee is less than $20,000)**, including:

(a) $6,520.00 for representation by David Gamble at the March 13, 2024 status conference in Pensacola, Florida;

(b) $884.59 in related travel and lodging expenses;

(c) $11,925.00 for expert reports and litigation preparation rendered futile by Defendants' misconduct; and

(d) $477.76 in miscellaneous litigation costs;

(e) amount set aside from settlement to cover common benefit fee

These damages are recoverable under all applicable causes of action, including fraud and breach of fiduciary duty.

### 7.3 Inconvenience Damages

Defendants' misconduct forced Canup to learn about and understand duties that competent counsel should have performed, including analyzing complex legal issues as well as studying fiduciary duties owed by attorneys, and uncovering fraud and concealment theories that revealed how his own counsel had deceived him. These burdens disrupted Canup's daily life, imposed unnecessary strain, and deprived him of reliable representation. Canup seeks damages for loss of time, disruption, and inconvenience. The amount is left to the discretion of the trier of fact.

### 7.4 Exemplary Damages

Defendants acted with fraud, malice, and conscious disregard of Canup's rights by:

(a) appearing as counsel without consent;

(b) accessing confidential medical records without authorization;

(c) concealing material terms and conflicts of interest;

(d) withdrawing or refusing to act during critical litigation phases; and

(e) pressuring Canup toward an unfair settlement.

Canup seeks exemplary damages under *Tex. Civ. Prac. & Rem. Code ch. 41.003*, in an amount sufficient to punish and deter.

### 7.5 Disgorgement

Canup seeks disgorgement of any common benefit fees traceable to his settlement, Florida Defendants as former members of the PSC in the MDL obtained such benefits through fraud and in breach of duty.

## 7.6 Interest and Costs

Canup seeks pre- and post-judgment interest as authorized by law, together with all taxable court costs and litigation expenses.

# VIII.

## JURY DEMAND

8.1 Canup requests a jury trial on all claims and issues so triable.

# IX.

## CONDITIONS PRECEDENT

9.1 All conditions precedent have occurred and been satisfied.

# X.

## NOTICE PURSUANT TO T.R.C.P. 193.7

10.1 Canup provides notice to Defendants pursuant to Rule 193.7 of the Texas Rules of Civil Procedure that Canup may utilize as evidence during the trial of this lawsuit all documents exchanged by the parties in discovery in this case.

# XI.

## PRAYER

11.1 ACCORDINGLY, Canup respectfully requests that Defendants be cited to appear and answer, and that Canup be granted judgment against Defendants awarding Canup all damages he is entitled to, including all damages and other relief (at law or in equity) pled in the causes of action and other parts of this instrument above, actual damages and losses, economic damages, compensatory damages, exemplary damages, costs, pre- and post-judgment interest, disgorgement of any fees or benefits wrongfully obtained by Defendants, and all other damages Canup is entitled to in equity or by other applicable law.

11.2 Canup further requests such other and further relief, general or special, at law or in equity, to which Canup may show himself justly entitled.

Dated October 27, 2025

Respectfully submitted,

*/s/ Brandon Canup*
Brandon Canup

4812 Hidden Oaks Ln
Arlington, Texas 76017
(972) 762-4314

canup.brandon@gmail.com

pro se

Case No. 2895    Document 2025-4    Filed 11/26/25    Page 43 of 43

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Envelope ID: 107325134
Filing Code Description: Petition
Filing Description: Original Petition
Status as of 10/27/2025 4:25 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Brandon Canup | | canup.brandon@gmail.com | 10/27/2025 1:29:54 PM | NOT SENT |



Clerk of Court
United States District Court
Northern District of Texas
501 West 10th Street, Room 310
Fort Worth, TX 76102-3673

RECEIVED

DEC - 9 2025

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS